















CAG   1/4/06   11:13

3:05-CV-01167   LASTER V. T-MOBILE USA INC

*70*

*AMDCMP.*



ORIGINAL

FILED

05 DEC 30 AM 11: 25

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

1  NICHOLAS & BUTLER, LLP
       Craig M. Nicholas  (SBN 178444)
2      Matthew B. Butler  (SBN 201781)
   225 Broadway, 19th Floor
3  San Diego, California 92101
   Telephone:  (619) 325-0492
4  Facsimile:  (619) 325-0496

5  Attorneys for Plaintiffs

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  ·JENNIFER L. LASTER, an individual;          ) CASE NO.:  05 CV 1167 DMS (AJB)
    ·ANDREW THOMPSON, an individual;             )
12  ·ELIZABETH VOORHIES, an individual, on        )
      behalf of themselves and all others similarly  )
13    situated, and on behalf of the general public,  ) CLASS ACTION
      and ROES 1 through 100, inclusive,          )
14                                               ) SECOND AMENDED COMPLAINT
              Plaintiffs,                         ) FOR:
15                                               )
    vs.                                          ) (1)   VIOLATION OF CALIFORNIA
16                                               )       BUSINESS AND PROFESSIONS
    ·T-MOBILE USA, INC., a Delaware              )       CODE SECTION 17500 ET. SEQ.;
17  Corporation;·OMNIPOINT                        )
    COMMUNICATIONS, INC. dba T MOBILE,           ) (2)   VIOLATION OF CALIFORNIA
18  a Delaware Corporation;·TMO CA/NV, LLC,       )       CIVIL CODE SECTION 1770 ET.
    a California limited liability company;        )       SEQ.; and
19  CELLCO PARTNERSHIP dba VERIZON               )
    WIRELESS, a Delaware General Partnership;      ) (3)   VIOLATION OF CALIFORNIA
20  VERIZON WIRELESS (VAW) LLC dba               )       BUSINESS AND PROFESSIONS
    VERIZON WIRELESS, a Delaware Limited          )       CODE SECTION 17200 ET. SEQ.
21  Liability Company;·AIRTOUCH CELLULAR          )
    dba VERIZON WIRELESS;·CINGULAR               )
22  WIRELESS, LLC, a Delaware limited             )
    liability company;·NEW CINGULAR              )
23  WIRELESS PCS, LLC dba CINGULAR               )
    WIRELESS, a California limited liability        )
24  company;·GO WIRELESS, INC., a California       )
    corporation, and·DOES I through 100,           )
25  inclusive,                                    )
                                                 )
26              Defendants.                       )
                                                 )
27

28  / / /

1

2    Plaintiffs JENNIFER L. LASTER, ANDREW THOMPSON, and ELIZABETH

3    VOORHIES, individually and on behalf of all others similarly situated (hereinafter collectively

4    "Plaintiffs"), hereby complain and allege on information and belief as follows:

5                                               I.

6                                    **INTRODUCTION**

7            1.      This case arises out of Defendants falsely advertising and undertaking the illegal

8    and unfair business act and/or practice of charging consumers sales tax on wireless

9    telecommunications devices (hereinafter "cell phones") that were either advertised as free or

10   advertised at a discounted price where the full retail price was used to calculate the sales tax.

11           2.      At all times herein relevant, Defendants T-MOBILE USA, INC., OMNIPOINT

12   COMMUNICATIONS, INC. dba T MOBILE, TMO CA/NV, LLC (hereinafter collectively

13   referred to as the "T-MOBILE ENTITIES"); CELLCO, VAW, AIRTOUCH (hereinafter

14   collectively referred to as the "VERIZON ENTITIES"); CINGULAR WIRELESS LLC, NEW

15   CINGULAR WIRELESS PCS dba CINGULAR WIRELESS (hereinafter collectively referred to

16   as the "CINGULAR ENTITIES"), and GO WIRELESS, as defined below, and their predecessors,

17   by and through their parent companies, subsidiaries, agents, affiliates, and/or other directly or

18   indirectly owned or controlled business entities (collectively referred to herein as "Defendants"),

19   advertised, offered for sale and sold cell phones in conjunction with the sale of wireless

20   telecommunication services.  Defendants have engaged, and continue to conduct, an advertising

21   campaign representing to consumers that Defendants' cell phones may be obtained: (1) free with

22   the activation of telecommunication service; (2) free with the purchase of one cell phone; (3) free

23   after rebate; (4) at a discount; and/or (5) at a discount after rebate.  Defendants' advertising

24   campaign is false and misleading because Defendants fail to adequately disclose that consumers

25   are charged sales tax based on the full retail price of the cell phones (referred to herein as

26   Defendants' "false advertising campaign").

27   / / /

28   / / /

## II.

## PARTIES

3.    Plaintiff JENNIFER L. LASTER (hereinafter "LASTER") is an individual who at all times herein relevant resided, and continues to reside in the State of California, County of San Diego.  In or about February 2005, the T-MOBILE ENTITIES charged LASTER $0 for her cell phone, in conjunction with the purchase of a wireless telecommunications service package wherein she was required to sign a contract to purchase service for more than one month.  There was no stated retail price for the cell phone, but LASTER was charged $28.22 in sales tax, equal to 7.75 % of $364.13.

4.    Plaintiff ANDREW THOMPSON (hereinafter "THOMPSON") is an individual who at all times herein relevant resided, and continues to reside in the State of California, County of San Diego.  The VERIZON ENTITIES charged Plaintiff THOMPSON $79.99 for one cell phone, and gave him the second cell phone purportedly for free, in conjunction with the purchase of a wireless telecommunications service package wherein he was required to sign a contract to purchase service for more than one month.  The stated retail price of each cell phone was $179.99.  Plaintiff THOMPSON was charged $27.90 in sales tax, equal to 7.75 % of $359.90, the full retail price for two phones.

5.    Plaintiff ELIZABETH VOORHIES (hereinafter "VOORHIES") is an individual who at all times herein relevant resided, and continues to reside in the State of California, County of San Diego.  Defendant GO WIRELESS and the CINGULAR ENTITIES charged Plaintiff VOORHIES $0 for a cell phone, in conjunction with the purchase of a wireless telecommunications service package wherein she was required to sign a contract to purchase services for two years.  The stated retail price of the cell phone was $119.99.  Plaintiff VOORHIES was charged a total of $10.31 in sales tax, on a total of $146.98 in product, including the cell phone and a case (with a stated retail value of $26.99).

6.    Defendant T-MOBILE USA, INC. (hereinafter "TMU") is a Delaware corporation, and a California foreign corporation, authorized to do business and doing business in the State of

///

1 California and County of San Diego in particular. TMU's principal place of business is Bellevue,
2 Washington.

3       7.    Defendant OMNIPOINT COMMUNICATIONS, INC. dba T MOBILE ("OCI") is
4 a Delaware Corporation , and a California foreign corporation, authorized to do business and
5 doing business in the State of California and County of San Diego in particular. OCI's principal
6 place of business is Bellevue, Washington.

7       8.    Defendant TMO CA/NV, LLC  (hereinafter "TMO") is a Delaware corporation,
8 and a California foreign corporation, authorized to do business and doing business in the State of
9 California and County of San Diego in particular. TMO's principal place of business is Bellevue,
10 Washington.

11       9.    Defendant CELLCO PARTNERSHIP dba VERIZON WIRELESS (hereinafter
12 "CELLCO") is a Delaware general partnership. CELLCO was previously wholly-owned by Bell
13 Atlantic Corporation through which CELLCO operated its Bell Atlantic Mobile and Southwestern
14 U.S. wireless businesses.  In approximately September 1999, Bell Atlantic Corporation and
15 Vodafone AirTouch Plc, now known as Vodafone Group Plc, agreed to combine their U.S. mobile
16 wireless telecommunications businesses in the partnership. Bell Atlantic and Vodafone combined
17 these businesses by contributing additional wireless operations to CELLCO in two stages.  In
18 April 2000, Vodafone contributed U.S. mobile wireless assets in exchange for an approximate
19 65% equity interest in the partnership and Bell Atlantic contributed its interest in PrimeCo, which
20 was not held through CELLCO, and other wireless assets. The partnership thereupon began doing
21 business under the "Verizon Wireless" name. On or about June 30, 2000, Bell Atlantic and GTE
22 Corporation consummated a merger and formed Verizon Communications, Inc. (hereinafter
23 "VCI").  In July 2000, VCI contributed GTE's U.S. wireless assets to CELLCO, increasing VCI's
24 interest from approximately 35% to 55%, where it stands now.

25      10.    Defendant VERIZON WIRELESS (VAW) LLC dba VERIZON WIRELESS
26 (hereinafter "VAW") is a Delaware limited liability company and a California foreign limited
27 liability company, authorized to do business and doing business in the State of California and
28 County of San Diego in particular. VAW's principle place of business is Bedminster, New Jersey.

1      11.    Defendant AIRTOUCH CELLULAR dba VERIZON WIRELESS (hereinafter

2  "Airtouch") is a California corporation with its principal place of business in Bedminster, New

3  Jersey.

4      12.    Defendant CINGULAR WIRELESS, LLC (hereinafter "CINGULAR"), with its

5  principal place of business in Atlanta Georgia, is a company organized and existing under the

6  laws of the State of Delaware and a California foreign limited liability company authorized to and

7  conducting business for profit in the state of California.  CINGULAR was founded in 2000 by

8  SBC COMMUNICATIONS, INC. and BELLSOUTH CORPORATION, who own equity interests

9  in it of 60 and 40 percent, respectfully.  SBC Communications, Inc. and Bellsouth Corporation

10 evenly share management control of CINGULAR.  CINGULAR is the second-largest provider of

11 mobile wireless voice and data services in the United States by number of subscribers; it serves

12 more than 24 million customers.

13     13.    Defendant NEW CINGULAR WIRELESS PCS, LLC dba CINGULAR

14 WIRELESS is a California limited liability company with its principal place of business in

15 Atlanta, Georgia.

16     14.    Defendant GO WIRELESS, INC. (hereinafter "GO") is a California corporation

17 with its principal place of business in Temecula, California.  GO is a leading provider of wireless

18 products, services and accessories for mobile electronic devices in the western United States.

19                                         **III.**

20                          **JURISDICTION AND VENUE**

21     15.    Jurisdiction and venue are appropriate because TMU and OCI are California

22 foreign corporations.  VERIZON WIRELESS (VAW) LLC is a California limited liability

23 company, and AIRTOUCH CELLULAR is a California corporation.  GO is a California

24 corporation and CINGULAR, SBC WIRELESS, and PAC BELL are California foreign limited

25 liability companies.  Furthermore, each of the Defendants at all times herein relevant conducted

26 and continue to conduct business in the State of California, County of San Diego, and Defendants,

27 and each of them, illegally charged Plaintiffs for phones that were advertised for free and sold in

28 the State of California.  Defendants further charged class members more than certain discounted

1    amounts which were advertised in the State of California.  Defendants, and each of them, have

2    sufficient minimum contacts with California and intentionally availed themselves of the laws of

3    the State of California by advertising and conducting transactions therein.

4         16.    Plaintiffs filed California State Court actions against Defendants in the Superior

5    Court of California, County of San Diego, based on an initial assessment that the restitution

6    amount in this action was less than five-million dollars ($5,000,000).   Based on additional

7    research and evaluation of the restitution amount owed to Plaintiffs and the class members by

8    Defendants, Plaintiffs are now informed and believe that they are entitled to restitution in an

9    amount greater than five-million dollars ($5,000,000), which requires Plaintiffs to bring this

10   action in federal court pursuant to the Class Action Fairness Act of 2005.  28 U.S.C.A. 1711 et.

11   seq.  The action exceeds $5,000,000 in restitution relief, the class is larger than 100, and there is

12   one defendant that is a citizen of a different state than the Plaintiffs.  Plaintiffs therefore bring this

13   action to protect and preserve the rights of class members to complete restitution.

14        17.    Federal jurisdiction is pursuant to 28 U.S.C. 1332.

15                                  **IV.**

16                          **CLASS ALLEGATIONS**

17        18.    Plaintiffs reallege and incorporate by reference each and every allegation contained

18   in paragraphs 1 through 17 above, as if set forth at this point.

19        19.    Plaintiffs bring this Complaint as a class action pursuant to Rule 23(b) of the

20   Federal Rules of Civil Procedure on behalf of all consumers who entered into a transaction in

21   California wherein they received a cell phone for free or at a discount from Defendants in

22   conjunction with activation of cellular service, but were charged sales tax on a stated retail value

23   of such cell phone.

24        20.    On or about February 23, 2005, Plaintiff LASTER entered into a bundled

25   transaction with the T-MOBILE ENTITIES, located at 1014 5th Avenue, Suite 100, San Diego,

26   California.  Plaintiff LASTER was charged $0 for one Sharp cell phone with serial number

27   351689000305586 in conjunction with the purchase of a wireless telecommunications service

28   package wherein she was required to sign a contract to purchase service for more than one month.

1   There was no stated retail price of the cell phone, but Plaintiff LASTER was charged $28.22 in

2   sales tax, equal to 7.75 % of $364.13.

3        ´21.    In deciding to purchase the cell phone service package and receive the phone,

4   LASTER relied on the false advertising campaign conducted by the T-MOBILE ENTITIES, and

5   sustained losses as a result of the false advertising campaign.  Based on the false advertising

6   campaign, LASTER believed she would not be required to pay anything, including sales tax, for

7   the cell phone offered to her by the T-MOBILE ENTITIES purportedly for free.  The T-MOBILE

8   ENTITIES utilized the false advertising campaign to entice LASTER and other consumers to shop

9   for and consider signing a service contract, in addition to accepting cell phone(s) purportedly

10   given to consumers for "free" or at deep discounts.

11        22.    On the receipt provided to LASTER, the T-MOBILE ENTITIES indicated: "By

12   law, some states impose a tax based on the retail price or cost of our product instead of the

13   discounted price.  The sales tax on your handset or handset kit may therefore be higher than you

14   expected."  The T-MOBILE ENTITIES utilized the receipt as an ill-conceived effort to avoid

15   responsibility for engaging in a false advertising campaign designed to lure consumers into their

16   stores based on false pretenses.  The T-MOBILE ENTITIES thereby engaged in a bait-and-switch

17   tactic.  In addition, the receipt provided to LASTER suggests that California law required T-

18   MOBILE to charge her with the sales tax, which is a false and misleading representation of

19   California law.  By representing to LASTER that the phone would be given to her for free as part

20   of enticing her to sign the service agreement, the T-MOBILE ENTITIES implicitly represented

21   that the T-MOBILE ENTITIES would pay any applicable sales tax, as a cost of obtaining the

22   lucrative service agreement.

23        23.    On or about August 5, 2004, Plaintiff THOMPSON entered into a bundled

24   transaction with the VERIZON ENTITIES, located at 7007 Friars Road, Space 265, San Diego,

25   California 92108.  Plaintiff THOMPSON was charged $79.99 for one Samsung SCHA650SSV

26   cell phone, and was given the second Samsung SCHA650SSV cell phone for free, in conjunction

27   with the purchase of a wireless telecommunications service package wherein he was required to

28   sign a contract to purchase service for more than one month.  The stated retail price of each cell

1   phone was $179.99.  Plaintiff THOMPSON was charged $27.90 in sales tax, equal to 7.75% of

2   $359.90, the full retail price for two phones.

3       24.    In deciding to purchase the cell phone service package and receive the phones,

4   THOMPSON relied on the false advertising campaign conducted by the VERIZON ENTITIES,

5   and sustained losses as a result of the false advertising campaign.  Based on the false advertising

6   campaign, THOMPSON believed he would not be required to pay anything, including sales tax,

7   for the cell phone offered to him by the VERIZON ENTITIES purportedly for free.  The receipt

8   provided to THOMPSON identifies a single entry for "sales tax" without identifying whether

9   THOMPSON has been charged sales tax only on the cell phone he paid for, or additional sales tax

10   on the cell phone the VERIZON ENTITIES purportedly offered to him for free.  For this reason,

11   THOMPSON was unaware that the VERIZON ENTITIES charged him sales tax on the

12   purportedly "free" cell phone.  The VERIZON ENTITIES utilized the false advertising campaign

13   to entice THOMPSON and other consumers to shop for and consider signing a service contract, in

14   addition to accepting cell phone(s) purportedly given to consumers for "free" or at deep discounts.

15       25.    On or about November 14, 2004, Plaintiff VOORHIES entered into a bundled

16   transaction with an entity doing business as GO WIRELESS as well as the CINGULAR

17   ENTITIES, located at 13538 Poway Road, Suite A, Poway, California 92064.  Plaintiff

18   VOORHIES was charged $13.00 for a LG leather C1300 and a GSM-Nokia 6010 cell phone, in

19   conjunction with the purchase of a wireless telecommunications service package wherein she was

20   required to sign a contract to purchase service for more than one month.  The stated retail price of

21   the cell phone was $119.99.  Plaintiff VOORHIES was charged a total of $10.31 in sales tax, on

22   the retail value of both the cell phone and the case.

23       26.    In deciding to purchase the cell phone service package and receive the phone,

24   VOORHIES relied on the false advertising campaign conducted by GO WIRELESS and the

25   CINGULAR ENTITIES, and sustained losses as a result of the false advertising campaign.  Based

26   on the false advertising campaign, VOORHIES believed she would not be required to pay

27   anything, including sales tax, for the cell phone offered to her by GO WIRELESS and the

28   CINGULAR ENTITIES purportedly for free.  GO WIRELESS and the CINGULAR ENTITIES

1  utilized the false advertising campaign to entice VOORHIES and other consumers to shop for and

2  consider signing a service contract.  By representing to VOORHIES that the phone would be

3  given to her for free as part of enticing her to sign the service agreement, GO WIRELESS and the

4  CINGULAR ENTITIES implicitly represented that they would pay any applicable sales tax, as a

5  cost of obtaining the lucrative service agreement.

6      27.    Plaintiffs are informed and believe that at all times herein relevant, Defendants,

7  and each of them, advertised and marketed, in print and live media, free or deeply discounted cell

8  phones in conjunction with the sale of cell phone service.  Plaintiffs are further informed and

9  believe that Defendants, and each of them, often failed to disclose the fact that sales tax would be

10  charged on the full value of the phone.  Even in such instances when the sales tax was disclosed,

11  the type-size, font, and location of the disclosure was such that consumers were likely to be

12  misled to believe they were going to get the phone for free or for the stated, deeply discounted

13  price (plus sales tax on the discounted price).  At all times herein relevant, and in an ongoing

14  manner Defendants advertised such offers as "Buy One, Get One Free," "Free After Rebate," "All

15  Phones Free," "Free Out the Door," "$0 Out the Door,""$29 After Rebate,""$49.99 After

16  Rebate," and "$79 After Rebate." Some of the offers included asterisks next to the offer with

17  reference to fine print at the bottom of the advertisements with barely legible language such as

18  "taxes and other charges additional," "sales tax applies to the retail value of the phone," "sales tax

19  based upon MSRP of all phones," "Some restrictions apply.  See store for details," and

20  "government taxes and our surcharges could add 6%-28% to your bill."  Most often, the retail

21  value of the phones was not included in Defendants advertisements.  The advertisements for

22  "Free" phones were made more than six months out of each 12 month period from 2001 to

23  present, more than three times in any 12 months from 2001 to present, and did not have 30 days

24  between each offer.  Furthermore, Defendants' sale of the phones for "Free" in California

25  exceeded 50% of the Defendants' total volume of sales of phones in California.

26      28.    The members of the class are so numerous that separate joinder of each member is

27  impractical.  It is estimated that the number of class members exceeds 1,000,000. The disposition

28  of their claims in a class action will provide substantial benefits to the parties and the Court.

Furthermore, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications and would necessarily be dispositive of claims owned by non-party class members.  The proposed class herein shall be defined by the following subclasses:

    a.    All persons (whose identity can be determined based upon Defendants' records) who secured a cell phone in California, at a cost equal to the state sales tax calculated based upon an asserted retail value of the phone, when the phone was advertised in California as "FREE," either in conjunction with signing up for cellular service or with purchasing another phone, or both.

    b.    All persons (whose identity can be determined based upon Defendants' records) who secured a cell phone in California, at a stated cost which was less than Defendants' asserted retail value of the phone plus the state sales tax calculated based upon the asserted retail value of the phone.

29.    The claims of the representative Plaintiffs raise questions of law and fact that are common to questions of law and fact raised by the claims of each member of the class.

30.    The claims of the representative Plaintiffs are typical of the claims of each member of the class.

31.    The questions of law or fact common to the claims or of the representative Plaintiffs and the claims of each member of the class predominate over any questions of law or fact affecting individual members of the class.  Class representation is superior to other available methods for the fair and efficient adjudication of this controversy.

32.    Questions of law and/or fact that are common to the claims include but are not limited to:

    (A)    Whether the Defendants advertised phones for free and/or at a discounted price without adequately disclosing that the class members would have to pay sales tax on the retail value of the phones.

    (B)    Whether Defendants illicitly shifted the tax burden to their customers.

    (C)    Whether the class members were likely to be misled by Defendants' false advertising campaign.

///

(D)   Whether Defendants' actions of advertising and marketing free or deeply discounted cell phones constitutes false advertising pursuant to California Business & Professions Code Section 17500.

(E)   Whether the Defendants charged sales tax on the retail value of the phone despite the fact that they charged the class members less than the retail value.

(F)   Whether Defendants' actions in charging sales tax on the retail value of the cell phones, rather than the actual sales price, constitute unfair and/or fraudulent business acts and/or practices.

(G)   Whether Defendants' actions of advertising free phones but charging sales tax is an unlawful business act or practice under the Act (defined herein) based upon 16 C.F.R. §251.1.

33.   Plaintiffs claims are typical of the claims of the class in that the claims of all members of the class, result from the Defendants' illegal practice of charging sales tax either on phones that were advertised for free or on an asserted retail value of a phone that was sold at a discount.  There is no conflict between the representative Plaintiffs and other members of the class with respect to this action, or with respect to the claims for relief herein set forth.

34.   The majority of the class members are expected to be geographically located in the State of California.

35.   The named Plaintiffs are the representative parties for the class and are able to and will fairly and adequately protect the interests of the class.

## V.

## FIRST CAUSE OF ACTION

**(False Advertising/Violation of California Business &
Professions Code Section 17500 et. seq.)**
Against All Defendants

36.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 35 above, as if set forth at this point.

///

37.     Plaintiffs are informed and believe that Defendants advertised and marketed free or deeply discounted cell phones in conjunction with the sale of cell phone service.  Plaintiffs are further informed and believe that Defendants failed to adequately disclose the fact that sales tax would be charged on the full value of the phone.  Even in such instances when the sales tax was disclosed, the type-size, font, and location of the disclosure was such that consumers were likely to be misled to believe they were going to get the phone for free or the stated, deeply discounted price.

38.     Defendants knew or should have known that the advertising, as alleged above, is untrue and/or misleading.  Defendants knew or should have known that under the FTC Reg, as defined below, they could not advertise a product for free and then require a consumer to pay something for the product.  Defendants also knew or should have know that under the FTC Reg, as defined below, they could not advertise a product for free and then place conditions or additional charges in a footnote referenced by an asterisk.  In order not to mislead consumers, Defendants should have clearly and conspicuously set forth the fact that sales tax was going to be charged on an asserted retail value of the phone at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood.

39.     Defendants have committed acts of untrue and misleading advertising, as defined by Business & Professions Code Section 17500, by engaging in the acts and practices described above with the intent to induce members of the public to purchase their products and/or services.  At the time that Defendants made the above referenced misrepresentations in their advertisements, they knew or should have known that the advertising was untrue and misleading.  In deciding to purchase the cell phone service packages and receive the phone(s), Plaintiffs relied on the false advertising campaign conducted by Defendants, and sustained losses as a result of the false advertising campaign.

40.     Defendants' untrue and misleading advertising, as described above, presents a continuing threat to members of the general public in that Defendants' are continuing, and will continue unless enjoined, to commit such violations of Business & Professions Code Section

/ / /

1  17500.  This court is empowered to, and should, grant preliminary and permanent injunctive relief

2  against such acts and practices.

3       41.  As a direct and proximate result of the acts and practices alleged above, members

4  of the general public who purchased the cell phones lost and continue to lose monies in a sum

5  currently unknown but subject to proof at the time of trial.  This Court is empowered to, and

6  should, order restitution to all persons from whom Defendants unfairly and/or unlawfully took

7  money in order to accomplish complete justice.

8       42.  Plaintiffs also seek recovery of all attorneys' fees and litigation expenses pursuant

9  to California *Code of Civil Procedure* Section 1021.5.  Alternatively, Plaintiffs seek recovery of

10  all attorneys' fees and all litigation expenses pursuant to the substantial benefit doctrine.

11  Plaintiffs also seek recovery of all attorneys' fees and other litigation expenses to be paid under

12  the common fund doctrine or other authority requiring Defendants to pay Plaintiffs' attorneys'

13  fees and litigation expenses.

14                                    **VI.**

15                    **SECOND CAUSE OF ACTION**

16          **(Violation of California Civil Code Section 1770 et. seq.)**
                           Against All Defendants

17

18       43.  Plaintiffs reallege and incorporate by reference each and every allegation contained

19  in paragraphs 1 through 42 above, as if set forth at this point.

20       44.  The Consumer Legal Remedies Act ("the CLRA") defines certain unfair methods

21  of competition and unfair or deceptive acts or practices which, if undertaken by a person in a

22  transaction intended to result, or which results in the sale or lease of goods or services to any

23  consumer are unlawful.  California *Civil Code* Section 1770.  These acts include advertising

24  goods or services with intent not to sell them as advertised, and making false or misleading

25  statements of fact concerning reasons for, existence of, or amounts of price reductions.  The

26  CLRA provides for the recovery of, among other relief, restitution of property and injunctive

27  relief.  California *Civil Code* Section 1780.

28  / / /

45.     Defendants' actions constitute unfair methods of competition and unfair or deceptive acts or practices as outlined in the CLRA.  Defendants, and each of them, advertised certain cell phones for free when they did not intend to sell them to Plaintiffs for free, but rather intended to sell the cell phones to Plaintiffs for the amount of the California state sales tax, figured on an asserted retail value of the phones.  The advertisements constituted false and/or misleading statements as to the existence of price reductions on the phones.  The Defendants, and each of them, knew or should have known that the aforementioned advertisements were false and/or misleading.  Defendants knew or should have known that under the FTC Reg, as defined below, they could not advertise a product for free and then require a consumer to pay something for the product.  Defendants also knew or should have know that under the FTC Reg, as defined below, they could not advertise a product for free and then place conditions or additional charges in a footnote referenced by an asterisk.  In order not to mislead consumers, Defendants should have clearly and conspicuously set forth the fact that sales tax was going to be charged on an asserted retail value of the phone at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood.

46.     Defendants' unfair methods of competition and unfair or deceptive acts or practices, as outlined in the CLRA, present a continuing threat to members of the general public in that Defendants' are continuing, and will continue unless enjoined, to commit such violations of Civil Code Section 1770.  This court is empowered to, and should, grant preliminary and permanent injunctive relief against such acts and practices.

47.     As a direct and proximate result of the acts and practices alleged above, members of the general public who purchased the cell phones lost and continue to lose monies in a sum currently unknown but subject to proof at the time of trial.  This Court is empowered to, and should, order restitution to all persons from whom Defendants unfairly and/or unlawfully took money in order to accomplish complete justice.

48.     Plaintiffs also seek recovery of all attorneys' fees and litigation expenses pursuant to California *Civil Code* Section 1780(d) and California *Code of Civil Procedure* Section 1021.5. Alternatively, Plaintiffs seek recovery of all attorneys' fees and all litigation expenses pursuant to

1   the substantial benefit doctrine.  Plaintiffs also seek recovery of all attorneys' fees and other

2   litigation expenses to be paid under the common fund doctrine or other authority requiring

3   Defendants to pay Plaintiffs' attorneys' fees and litigation expenses.

### VII.

### THIRD CAUSE OF ACTION

**(Violation of California Civil Code Section 17200 et. seq.)**
Against All Defendants

8       49.   Plaintiffs reallege and incorporate by reference each and every allegation contained

9   in paragraphs 1 through 48 above, as if set forth at this point.

10       50.   The Unfair Trade Practices Act ("the Act") defines unfair competition to include

11   any "unfair," "unlawful," or "fraudulent" business act or practice.  California *Business and*

12   *Professions Code* Section 17200.  Unlawful business acts are those which are in violation of

13   federal, state, county, or municipal statutes or codes, as well as regulations including the *Code of*

14   *Federal Regulations.* The Act also provides for injunctive relief and restitution for violations.

15   California *Business and Professions Code* Section 17203.

16       51.   Defendants' actions constitute unfair business acts and practices.  In the course of

17   conducting business, Defendants charged Plaintiffs sales tax on cell phones that Plaintiffs

18   received free of charge.  Similarly, Defendants charged sales tax on a stated retail value of a cell

19   phone when consumers paid less than the retail value.  To collect sales tax from an end-user

20   consumer based upon any price other than what the end-user consumer paid for the cell phone is

21   against public policy, oppressive, unscrupulous, and injurious to consumers.   There is no

22   justification for such acts and practices.

23       52.   Defendants' actions constitute unlawful business acts and practices because they

24   violated the CLRA, as well as The Code of Federal Regulations, which states at Title 16, Chapter

25   I, Subchapter B, Part 251 (hereinafter the "FTC Reg"), in relevant part (emphasis added):

26   §251.1 The Guide

27   (a)   General

28   (1)   ...

(2)     Because the purchasing public continually searches for the best buy, and regards the offer of "Free" merchandise or service to be a special bargain, **all such offers must be made with extreme care so as to avoid the possibility that consumers will be misled or deceived...**

(b)     Meaning of "Free".

(1)     The public understands that ... an offer of "Free" merchandise or service is based upon a regular price for the merchandise or service which must be purchased by consumers in order to avail themselves of that which is represented to be "Free". **In other words, when the purchaser is told that an article is "Free" to him if another article is purchased, the word "Free" indicates that he is paying <u>nothing</u> for that article and no more than the regular price for the other.** Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased, by the substitution of inferior merchandise or service, or otherwise.

...

(c)     Disclosure of conditions.  When making "Free" or similar offers *all the terms, conditions and obligations upon which receipt and retention of the "Free" item are contingent should be set forth CLEARLY AND CONSPICUOUSLY AT THE OUTSET OF THE OFFER SO AS TO LEAVE NO REASONABLE PROBABILITY that the terms of the offer might be misunderstood*.  Stated differently, all of the terms, conditions and obligations should appear in close conjunction with the offer of "Free" merchandise or service.  **<u>For example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset.</u>**

(d)     Supplier's responsibilities. ... [I]f the supplier knows, or should know, that a "Free" offer he is promoting is not being passed on by a reseller, or otherwise is being used by a reseller as an instrumentality for deception, it is improper for the supplier to continue to offer the product as promoted to such reseller.  He should take appropriate steps to bring an end to the deception, including the withdrawal of the "Free" offer.

...

(h)     Frequency of offers.  So that a "Free" offer will be special and meaningful, a single size of a product or a single kind of service should not be advertised with a "Free" offer in a trade area for more than six months in any 12-month period.  At least 30 days should elapse before another such offer is promoted in the same trade area.  No more than three such offers should be made in the same area in any 12-month period.  In such period, the offeror's sale in that area of the product in the size promoted with a "Free" offer should not exceed 50% of the total volume of his sales of the product, in the same size, in the area.

53.     Defendants' advertising campaign violates the FTC Reg because Defendants do not set forth clearly and conspicuously, at the outset of the offer, that Plaintiffs were required to pay the state sales tax on the retail value of phones in order to take advantage of offers for "Free"

1  phones. In fact, the only way any language about sales tax was included in some of Defendants'

2  advertisements was via asterisk referring to a footnote. The FTC Reg specifically invalidates the

3  use of footnotes in such circumstance. Defendants' advertisements not only eliminated any

4  reasonable probability that the terms of the offer might be misunderstood, but, quite to the

5  contrary, virtually ensured that the terms of the offer would be misunderstood. Furthermore,

6  Defendants' advertisements were made more than six months out of each 12 month period from

7  2001 to present, more than three times in any 12 months from 2001 to present, and did not have

8  30 days between each offer. Finally, Defendants' sale of the phones for "Free" in California

9  exceeded 50% of the Defendants' total volume of sales of phones in California.

10      54.    Defendants' actions constitute fraudulent business acts and/or practices since

11  members of the public are likely to be deceived. Defendants have advertised and promoted, and

12  continue to advertise and promote, certain phones for free or at a significant discount. Consumers

13  have been and are likely to believe that they will receive the phone free of charge, when in fact

14  Defendants have charged, and continue to charge the consumers sales tax on the phone.

15  Furthermore, other consumers are led to believe that they will receive cell phones at steep

16  discounts in bundled transactions when in fact consumers are charged sales tax on a stated retail

17  value of the phone without regard to the offered discount. Consumers are likely to be deceived, as

18  the extent of the discount they receive has been, and continues to be, less than what they are led to

19  believe. In deciding to purchase the cell phone service packages and receive the phone(s),

20  Plaintiffs relied on the false advertising campaign conducted by Defendants, and sustained losses

21  as a result of the false advertising campaign. Such business acts and practices are fraudulent

22  under the Act.

23      55.    Plaintiffs, as representatives of a class of persons with common or general interest,

24  are entitled to bring an action to enjoin Defendants' wrongful practices and to obtain restitution

25  for the monies paid to Defendants by reason of the wrongful practices. Plaintiffs may bring such

26  action on behalf of the class of people with common or general interest, pursuant to California

27  *Business & Professions Code* Section 17200, et. seq.

28  / / /

56.     As a direct and proximate result of Defendants' unfair competition in violation of the Act, Plaintiffs have individually lost money, and the members of the public who have purchased cell phones from Defendants have lost, and continue to lose, money in sums exceeding the jurisdictional minimum of this Court, to be proven at the time of trial.  Plaintiffs request this Court order, as it is empowered to order, restitution to all persons from whom Defendants unfairly and/or unlawfully took money.

57.     Defendants' violation of 16 C.F.R. §251.1 and unfair competition in violation of the Act presents a continuing threat to members of the general public in that Defendants are continuing, and will continue, unless enjoined, to commit unlawful, unfair, and/or fraudulent business acts or practices. Plaintiffs request that this Court order a preliminary and permanent injunction against such acts and practices.

58.     Plaintiffs also seek recovery of all attorneys' fees and litigation expenses pursuant to California *Code of Civil Procedure* Section 1021.5.  Alternatively, Plaintiffs seek recovery of all attorneys' fees and all litigation expenses pursuant to the substantial benefit doctrine. Plaintiffs also seek recovery of all attorneys' fees and other litigation expenses to be paid under the common fund doctrine or other authority requiring Defendants to pay Plaintiffs' attorneys' fees and litigation expenses.

## VIII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.     For restitution to all persons from whom Defendants unlawfully, unfairly, or fraudulently took money, including a full refund of all sales tax improperly charged and accrued interest, in addition to other unjust enrichment of Defendants, in an amount to be proven at trial;

2.     For declaratory relief finding that Defendants have engaged in unfair, unlawful, or fraudulent business acts or practices in violation of California *Business & Professions Code* Section 17200, et. seq. and 17500;

3.    For a temporary restraining order and a preliminary and permanent injunction enjoining Defendants and their officers, directors, agents, distributors, servants, employees, attorneys, and all others in active concert or participation with Defendants, or any of them, jointly and severally, during the pendency of this action and permanently thereafter from engaging in the false advertising campaign and charging consumers sales tax on any amount other than the amount each individual consumer pays for each cell phone separately;

4.    For interest at the maximum rate allowed by law;

5.    For costs of suit;

6.    For Plaintiffs to be awarded attorneys' fees and all litigation expenses pursuant to the California Civil Code Section 1780(d) and California Code of Civil Procedure Section 1021.5. Alternatively, for all attorneys' fees and all litigation expenses to be awarded pursuant to the substantial benefit doctrine, the common fund doctrine, or any other provision of law; and

7.    For such other and further relief as the Court may deem just and proper.


**NICHOLAS & BUTLER, LLP**


Dated: December 30, 2005       By: _Matth B Butl_____

Matthew B. Butler
Attorneys for Plaintiffs

NICHOLAS & BUTLER, LLP
    Craig M. Nicholas  (SBN 178444)
    Matthew B. Butler  (SBN 201781)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone:   (619) 325-0492
Facsimile:    (619) 325-0496

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER L. LASTER, an individual; ANDREW THOMPSON, an individual; ELIZABETH VOORHIES, an individual, on behalf of themselves and all others similarly situated, and on behalf of the general public, and ROES 1 through 100, inclusive,<br><br>                          Plaintiffs,<br><br>vs.<br><br>T-MOBILE USA, INC., a Delaware Corporation; OMNIPOINT COMMUNICATIONS, INC. dba T MOBILE, a Delaware Corporation; TMO CA/NV, LLC, a California limited liability company; CELLCO PARTNERSHIP dba VERIZON WIRELESS, a Delaware General Partnership; VERIZON WIRELESS (VAW) LLC dba VERIZON WIRELESS, a Delaware Limited Liability Company; AIRTOUCH CELLULAR dba VERIZON WIRELESS; CINGULAR WIRELESS, LLC, a Delaware limited liability company; NEW CINGULAR WIRELESS PCS, LLC dba CINGULAR WIRELESS, a California limited liability company; GO WIRELESS, INC., a California corporation, and DOES 1 through 100, inclusive,<br><br>                          Defendants. | CASE NO.:  05CV1287 JM (AJB)<br><br>**PROOF OF SERVICE** |

//// 

//// 

---

I, **Teresa Maxey,** declare that I am over the age of 18 years and am not a party to the case; I am employed in the County of San Diego, California, where the mailing occurs; and my business address is Nicholas & Butler, LLP, 225 Broadway, 19th Floor, San Diego, California 92101. On December 30, 2005 I served the within: **SECOND AMENDED COMPLAINT** on the interested parties in said action by:

[ ]   **BY FACSIMILE TRANSMISSION**: In addition to service by mail as set forth below, the counsel or interested party authorized to accept service was also forwarded a copy of said document(s) by facsimile transmission at the telefax number corresponding with his/her/its name. The facsimile machine I used complied with CRC Rule 2003(3) and no error was reported by the machine. Pursuant to CRC Rule 2005(i), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

[ ]   **BY PERSONAL DELIVERY**: I caused each envelope to be hand-delivered to each addressee leaving said envelope with either the addressee directly or another person at that address authorized to accept service on the addressee's behalf.

[X]   **BY MAIL:**   as follows:

    [ ]   **BY OVERNIGHT COURIER:** I placed the above-referenced document(s) in an envelope for collection and delivery on this date in accordance with standard FEDERAL EXPRESS overnight delivery procedures.

    [X]   By placing a copy thereof in a sealed envelope addressed as follows:

### SEE ATTACHED LIST OF PARTIES SERVED

I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service via First Class Mail on that same day in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **December 30, 2005,** at San Diego, California.

Teresa Maxey

*JENNIFER LASTER V. T-MOBILE USA, INC., ET AL.*
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DISTRICT COURT CASE NO. 05CV1287 JM (AJB)

**PROOF OF SERVICE**
**LIST OF PARTIES SERVED**

**Attorneys for TMO CA/NV, LLC, T-Mobile USA, Inc.,**
**Omnipoint Communications, Inc. dba T-Mobile**
William N. Kammer, Esq.
Alison L. Pivonka, Esq.
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, CA 92101
(619) 231-0303/Fax (619) 231-4755

**Attorneys for TMO CA/NV, LLC, T-Mobile USA, Inc.,**
**Omnipoint Communications, Inc. dba T-Mobile**
James Grant, Esq.
STOKES LAWRENCE, P.S.
800 Fifth Avenue, Suite 4000
Seattle, WA 98104-3179
(206) 626-6000/Fax (206) 464-1496

**Attorneys for Cingular Wireless,LLC and**
**New Cingular Wireless, PCS, LLC dba Cingular Wireless**
Jesse M. Jauregui, Esq.
Michele A. Powers, Esq.
WESTON BENSHOOF ROCHEFORT RUBALCAVA
        & MACCUISH, LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
(213) 576-1000/Fax (213) 576-1100

**Attorneys for Verizon Wireless (VAW) LLC dba**
**Verizon Wireless, Cellco Partnership dba Verizon**
**Wireless, Airtouch Cellular dba Verizon Wireless**
Henry Weissmann, Esq.
Shont Miller, Esq.
MUNGER TOLLES & OLSON
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
((213) 683-9100/Fax (213) 687-3702

Leigh R. Schachter, Esq.                    *COURTESY COPY VIA E-MAIL*
VERIZON WIRELESS
180 Washington Valley
Bedminister, NJ 07921
(908) 306-7597/Fax (908) 306-7766

N&B
ATTORNEYS AT LAW
SAN DIEGO

1  **Attorneys for Go Wireless, Inc.**
   John C. Wynne, Esq.
2  Steven T. Coopersmith, Esq.
   **DUCKOR SPRADLING METZGER & WYNNE**
3  401 West "A" Street, Suite 2400
   San Diego, CA 92101-7915
4  (619) 231-3666/Fax (619) 231-6629

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**N&B**