1 | MICHELE A. POWERS (State Bar No. 174779)
E-mail: mpowers@wbcounsel.com

2 | **WESTON, BENSHOOF, ROCHEFORT,**
   **RUBALCAVA & MacCUISH LLP**

3 | 333 South Hope Street
Sixteenth Floor

4 | Los Angeles, California 90071
Telephone:  (213) 576-1000

5 | Facsimile:  (213) 576-1100

6 | DONALD M. FALK (State Bar No. 150256)
E-mail:  dfalk@mayerbrown.com

7 | **MAYER BROWN LLP**
Two Palo Alto Square

8 | 3000 El Camino Real, Suite 300
Palo Alto, CA 94306-2112

9 | Telephone: (650) 331-2000
Facsimile: (650) 331-2060

10 |

11 | Attorneys for Defendant
CINGULAR WIRELESS LLC n/k/a AT&T
MOBILITY LLC

12 |

13 | **UNITED STATES DISTRICT COURT**

14 | **SOUTHERN DISTRICT OF CALIFORNIA**

15 |

| | |
|---|---|
| JENNIFER L. LASTER, an individual; ANDREW THOMPSON, an individual; ELIZABETH VOORHIES, an individual, on behalf of themselves and all others similarly situated, and on behalf of the general public, and ROES 1 through 100, inclusive, | Case No. 05 CV 1167 DMS (AJB) [Consolidated with Case No. 05 CV 1288 JM (AJB), Case No. 05 CV 1287 JM (AJB) and 06 CV 0675 DMS NLS] |
| Plaintiffs, | **DECLARATION OF NEAL S. BERINHOUT IN SUPPORT OF DEFENDANT AT&T MOBILITY LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS CLAIMS OF** *CONCEPCION* **PLAINTIFFS PURSUANT TO THE FEDERAL ARBITRATION ACT** |
| v. | |
| T-MOBILE USA, INC., a Delaware Corporation; OMNIPOINT COMMUNICATIONS, INC. dba T-MOBILE, a Delaware Corporation; TMO CA/NV, LLC, a California limited liability company; CELLCO PARTNERSHIP dba VERIZON WIRELESS, a Delaware General Partnership; VERIZON WIRELESS (VAW) LLC dba VERIZON WIRELESS, a Delaware Limited Liability Company; AIRTOUCH CELLULAR dba VERIZON WIRELESS; CINGULAR WIRELESS, LLC, a Delaware limited liability company; NEW CINGULAR WIRELESS PCS, LLC dba CINGULAR WIRELESS, a California limited liability company; GO WIRELESS, | Date:   April 18, 2008 Time:   1:30 p.m. Ctrm:   10 Hon. Dana M. Sabraw |

1    INC., a California corporation, and DOES 1
     through 100, inclusive,

2
                              Defendants.
3

4

5    VINCENT CONCEPCION and LIZA
     CONCEPCION, on Behalf of Themselves and
     All Others Similarly Situated,
6
                              Plaintiffs,
7
            v.
8
     CINGULAR WIRELESS LLC,
9
     Defendant.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

Exhibit 1:     Notice of Improved Arbitration Clause......................................9-14

Exhibit 2:     Printout of the version of ATTM's Provision Posted on ATTM's Web Site......................................................................................15-17

Exhibit 3:     Web Page at http://www.att.com/arbitration-information ........................18-23

Exhibit 4:     Demand Form on American Arbitration Association's Web Page http://www.adr.org...........................................................................24

Exhibit 5:     Simplified Form provided by ATTM on Web Page http://www.att.com/arbitration-forms......................................25

Exhibit 6:     AAA Commercial Dispute Resolution Procedures...........................26-49

Exhibit 7:     Supplementary Procedures for Consumer Related Disputes ...............50-56

Exhibit 8:     Notice of Dispute form provided by ATTM on Web Page http://www.att.com/arbitratoni-forms.......................................57

Exhibit 9:     Description of the IVR System Containing Questions Subscribers Must Answer to Execute Electronic Signatures................................58

Exhibit 10:    Equivalent Description of the IVR System ...............................59-60

Exhibit 11:    Standard WSA used by ATTM in California in February 2002...........61-62

Exhibit 12:    Concepcions' May 2003 WSA................................................63-64

Exhibit 13:    Concepcions' February 2005 WSA............................................65-66

Exhibit 14:    A Blank Copy of Standard Form 2005 WSA................................67-68

Exhibit 15:    Concepcions' May 2006 WSA................................................69-70

Exhibit 16:    Terms of Service Booklet.....................................................71-86

Exhibit 17:    First Page of Concepcions' December 15, 2006 Bill...........................87

Exhibit 18:    First Page of Concepcions' January 2007 Bill and Last Pages of February and March Bills................................................88-90

i

DECLARATION OF NEAL S. BERINHOUT IN SUPPORT OF DEFENDANT ATTM'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS; Case No. 05cv1167(DMS(AJB)

1140174.2

1

2

## DECLARATION OF NEAL S. BERINHOUT

3

I, Neal S. Berinhout, hereby declare as follows:

4

1.       I am employed by AT&T Mobility LLC ("ATTM") (formerly Cingular Wireless

5

LLC ("Cingular")) as Associate General Counsel—Litigation.  In that position, I have been

6

involved with reviewing the contracts used by ATTM for the provision of wireless services, as

7

well as the procedures for mailing amendments to all subscriber agreements, including

8

amendments to ATTM's arbitration provisions.  I am familiar with ATTM's procedures for

9

archiving, retaining, and retrieving true and correct copies of contracts between ATTM and its

10

customers.

11

2.       The following facts are of my own personal knowledge, and if called as a witness

12

I could and would testify competently as to their truth.

13

### Background

14

3.       Cingular was formed in 2000 as a joint venture owned 60% by SBC

15

16

Communications, Inc. and 40% by BellSouth Corporation.

17

4.       In November 2005, SBC Communications, Inc. completed its merger with AT&T

18

Corporation, forming AT&T Inc.  AT&T Inc. completed its acquisition of BellSouth Corporation

19

by December 29, 2006, thereby consolidating ownership of Cingular.

20

21

5.       Cingular Wireless was renamed ATTM on January 8, 2007.

22

### Arbitration Provision

23

6.       Since ATTM began operating (as Cingular Wireless) in October 2000, it has

24

always included an arbitration provision in the terms and conditions of service that govern its

25

subscriber agreements.

26

27

7.       In 2006, ATTM revised its arbitration provision to make arbitration more

28

convenient and less expensive for its customers.

8.    In creating the 2006 arbitration provision, ATTM consulted with experts, including but not limited to Professor Richard A. Nagareda, a professor at Vanderbilt University Law School whose scholarship focuses on aggregate dispute resolution. ATTM accommodated their comments when finalizing the 2006 arbitration provision.

9.    ATTM sent a copy of the 2006 arbitration provision to all of the customers that it bills on a monthly basis—including Vincent and Liza Concepcion—at their billing addresses via first class mail in December 2006.  In addition, as of March 2007, new ATTM wireless service agreements ("WSAs") have contained the 2006 arbitration provision.  A true and correct copy of the Notice of Improved Arbitration Clause mailed to subscribers is attached as Exhibit 1.

10.   ATTM also included a legend on its subscribers' December 2006 and January through March 2007 bills to remind them that the arbitration provision in their contracts had been changed and to invite them to view information about arbitration on ATTM's web site (at http://www.cingular.com/disputeresolution or, later, http://www.att.com/disputeresolution).

11.   In addition, in January 2007 ATTM modified the language in the revised arbitration provision to make it clear that customers who receive more than the amount of ATTM's last settlement offer are entitled to reimbursement of the expenses incurred in the arbitration in addition to double attorneys' fees.  That clarification has been made to the version of ATTM's provision on ATTM's web site and has been included in new ATTM WSAs as of March 2007.  A printout of the version of ATTM's provision posted on ATTM's web site (at http://www.att.com/disputeresolution) is attached as Exhibit 2.

12.   The features of ATTM's new arbitration provision are explained on ATTM's web site at http://www.att.com/disputeresolution and at http://www.att.com/arbitration-information. (For the convenience of current and former customers, those web pages may also be accessed at http://www.cingular.com/disputeresolution   and   http://www.cingular.com/arbitration-informa-

-2-

tion.)   The web page at http://www.att.com/arbitration-information provides information designed to explain the arbitration process to non-lawyers.  A true and correct copy of that document is attached as Exhibit 3.

13.   Customers may download from ATTM's website all of the necessary paperwork for initiating an arbitration under the 2006 provision.  Customers may use either the demand form available on the American Arbitration Association's ("AAA") website (at http://www.adr.org) or the simplified form provided by ATTM on its website (at http://www.att.com/arbitration-forms).  True and correct copies of these forms are attached as Exhibits 4 and 5.

14.   ATTM's 2006 arbitration provision provides that any arbitrations will be conducted under the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes of the AAA, as modified by the arbitration provision. True and correct copies of the current versions of the AAA Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes are attached as Exhibits 6 and 7.

15.   Many disputes between ATTM and its customers are resolved before a notice of dispute is ever sent to ATTM.  Customers frequently resolve their concerns by calling or e-mailing ATTM's customer service department.  The vast majority of billing problems, including claims by customers that unauthorized or inaccurate charges have appeared on a bill, are quickly resolved by customer service representatives either by explaining the nature of the charges to the satisfaction of the customer or by eliminating the charges from the bill.  A true and correct copy of the Notice of Dispute form provided by ATTM on its website (at http://www.att.com/ arbitration-forms) is attached as Exhibit 8.

-3-

16.    One way to measure how successful ATTM's customer service representatives are at resolving customer concerns and complaints is to determine the dollar value of credits "manually added" to customer accounts in response to concerns and complaints.  For example, from February 2007 to January 2008 ATTM representatives provided over $1.3 billion in manual credits in response to customer concerns and complaints.   In January 2008 alone, ATTM representatives provided about $120 million in credits.

17.    The cost of acquiring a new customer is quite high, averaging several hundred dollars.  This cost includes various marketing and administrative expenses and the cost of subsidizing the new customer's wireless phone.  In part because of the high cost of acquiring a new customer, ATTM generally attempts to accommodate customers who have complaints in order to retain them as customers.  One of the most important metrics by which ATTM and other wireless carriers measure their success is customer "churn," which is the monthly rate at which customers terminate their relationships with the carrier.   By reasonably accommodating customers who have complaints, ATTM may reduce its churn.

18.    Under ATTM's 2006 arbitration provision (as well as under previous versions), customers who seek to arbitrate their disputes are required to send ATTM a notice of their dispute.

19.    From December 23, 2006 to February 8, 2008, ATTM received over 570 Notice of Dispute and Arbitration Initiation forms from its customers.

20.    ATTM is often able to resolve customers' disputes to their satisfaction shortly after receiving notice of the disputes, thus obviating the need for the customer to commence an arbitration.  In fact, ATTM generally responds to a notice of dispute with a written settlement offer.

-4-

21.     If a dispute is not resolved within 30 days of the notice of dispute, the customer can initiate arbitration proceedings by completing either of the demand forms discussed in paragraph 13 and attached as Exhibits 4 and 5.

22.     Under ATTM's 2006 arbitration provision (as well as under the preceding version), subscribers have the option of bringing claims against ATTM in small claims court rather than in arbitration.  From 2005 through 2007, over 1100 such claims were brought against ATTM nationwide.   The vast majority of small-claims-court actions against ATTM settled before judgment.  While many of those claims either were settled or resulted in judgments for amounts exceeding $1,000, many subscribers have successfully vindicated claims for small dollar amounts.

### Service Agreements

23.     As a condition of obtaining wireless service from ATTM and activating wireless phones for use with ATTM's network, all customers must agree to a WSA that sets forth or incorporates by reference the terms and conditions of service.

24.     ATTM has revised the terms of its standard WSA and terms and conditions of service from time to time.  When a customer contracts to receive wireless service, he or she does so by accepting the then-current version of the WSA and terms and conditions of service.

25.     Some ATTM subscribers are required physically to sign their WSA at a store to accept the terms of the Agreement and to activate service.  Other subscribers instead must execute an electronic signature through an Interactive Voice Response ("IVR") system, which is accessed by calling a toll-free telephone number.

26.     The IVR system used to execute electronic signatures on Agreements asks a series of questions.  In order to execute the subscriber's electronic signature, the subscriber must select the "YES" option using a telephone keypad in response to the statement: "You agree to the terms

-5-

as stated in the Wireless Service Agreement and Terms of Service." If the subscriber does not respond "YES" to this question, the IVR system will not permit the electronic signature to be executed and would decline the contract, thereby preventing service from being connected.

27.    The dialogue that a customer will hear when calling the IVR system varies slightly, depending on whether the customer calls from a retail store or another location (for example, a customer may call the IVR system from home after receiving a phone he had ordered online). Attached as Exhibit 9 is a description of the IVR system containing the questions that subscribers must answer in order to execute their electronic signatures, as a customer would hear those questions when calling from a retail store. Attached as Exhibit 10 is the equivalent description of the IVR system, as the customer would experience it when calling from any other location.

28.    In the course of the activation process, the subscriber receives a copy of the Agreement just completed, the Terms of Service booklet (if applicable), the rate plan, and applicable feature brochures.

**Vincent and Liza Concepcion**

29.    In the regular and ordinary course of business, ATTM maintains records that contain information relevant to its customers' accounts.

30.    After this litigation was commenced, ATTM employees who report to me retrieved records relating to the account of named plaintiffs Vincent and Liza Concepcion.

31.    I can provide details of the Concepcions' account history based on my review of these records.

32.    According to ATTM's records, the Concepcions activated service with ATTM in February 2002. ATTM employees have been unable to locate a copy of the Concepcions' particular February 2002 WSA. That said, in the regular and ordinary course of business, the

-6-

Concepcions would have been required to agree to the standard WSA then in use by ATTM in order to activate service. A copy of the standard WSA used by ATTM in California in February 2002 is attached as Exhibit 11.

33. According to ATTM's records, the Concepcions renewed their service agreement on several occasions, first on or about May 24, 2003. A true and correct copy of the Concepcions' May 2003 WSA, with some information redacted to protect their privacy, is attached as Exhibit 12. The May 2003 WSA includes the terms of service, which begin directly below the signature line and are continued on the reverse side of the document.

34. The Concepcions renewed their service agreement again on or about February 12, 2005. A true and correct copy of the Concepcions' February 2005 WSA, as it has been preserved in ATTM's records, with some information redacted to protect their privacy, is attached as Exhibit 13. The February 2005 WSA includes the terms of service, which are printed in full on the reverse side. ATTM's copy of the Concepcions' 2005 WSA has been condensed from its original legal-sized form and saved in ATTM's systems as a letter-sized document. A blank copy of the standard form in its original legal size, which accurately reflects the typography as it would have appeared to Vincent Concepcion at the time he signed the 2005 WSA, is attached at Exhibit 14.

35. The Concepcions most recently renewed service on or about May 14, 2006. A true and correct copy of their May 2006 WSA, with some information redacted to protect their privacy, is attached as Exhibit 15.

36. The Concepcions' May 2006 WSA refers to and incorporates ATTM's then-current Terms and Conditions booklet, which would have been provided to them at the time they received the WSA. A true and correct copy of that Terms of Service booklet is attached as Exhibit 16.

-7-

37.     The Concepcions received a copy of ATTM's 2006 arbitration provision as an insert with the envelope containing their December 15, 2006 bill. The first page of that bill also notified them that the arbitration provision in their contract had been revised and directed them to ATTM's website (at http://www.cingular.com/disputeresolution or, later, http://www.att.com/disputeresolution) to view more information about arbitration. A true and correct copy of the first page of the Concepcions' December 15, 2006 bill, with some information redacted to protect their privacy, is attached as Exhibit 17.

38.     The first page of the Concepcions' January 2007 bill and the last pages of their February and March 2007 bills contained the same notification of the revised arbitration provision that was on their December 2006 bill. True and correct copies of the first page of the Concepcions' January 2007 bill and the last pages of their February and March 2007 bills, with some information redacted to protect their privacy, are attached as Exhibit 18.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 13, 2008.

_____
Neal S. Berinhout

-8-